Houston, J.
Plaintiff, doing business as Gymboree of Acton, brought suit against the Gymboree Corporation (“Gymboree”), Jane LaRoche, doing business as Gymboree of Westborough (“Jane”), and Maureen La-Roche, doing business as Kids in Motion (“Maureen”). Plaintiff claims that as a result of unfair competition from Maureen’s operation of her Kids in Motion business, the value of her Gymboree business has been diminished. Plaintiff asserts several claims against Gymboree and Jane for the alleged breach of: 1) the franchise agreement between plaintiff and Gymboree (the “Agreement”), 2) the franchise agreement between Jane and Gymboree, and 3) the non-disclosure/non-competition agreement between Jane and Gymboree and between Maureen and Gymboree. Plaintiff also asserts claims against all defendants for breach of the implied covenant of good faith and fair dealing, and violations of G.L.c. 93A. The complaint contains an additional claim for tortious interference with contractual relations against Jane. All three defendants have moved to dismiss the complaint pursuant to Mass.R.Civ.P. 12(b)(6), on the grounds that plaintiff has failed to state a claim against them for which relief can be granted. For the reasons set forth below, defendants’ motions to dismiss are GRANTED in part and DENIED in part.
BACKGROUND
Plaintiff has operated Gymboree of Acton under the Agreement since 1988. Gymboree is a corporation in the business of providing programs and equipment designed for child development. Although Gymboree has its principal office in Burlingame, California, the Agreement provides that its interpretation is to be governed by Massachusetts law.[2] Jane operates a Gymboree franchise in Westborough, Massachusetts, under a similar franchise agreement with Gymboree. Maureen is Jane’s sister-in-law and was formerly employed as Gymboree instructor/teacher by Jane. She was also a former employee of both Gymboree of Boston and Gymboree of Holden. At the time of her employment with Jane at Gymboree of Westborough, Maureen did not execute a non-disclosure/non-competition agreement,[3] which is a requirement for Gym-boree franchise employees, but had signed one during her previous employ at Gymboree of Boston. As a result of her failure to sign the non-disclosure/non-competition agreement while at Gymboree of Westborough, Gymboree directed Jane to terminate Maureen’s employment with Gymboree of Westborough, on the ground that failure to execute a non-competition agreement with all employees was a breach of Jane’s franchise agreement with Gymboree.
Prior to Maureen’s termination from Gymboree of Westborough, Maureen and Jane allegedly established Kids in Motion as a joint venture. Kids in Motion has programs and concepts for child development through music and movement activities similar to those of Gymboree. Plaintiff alleges that Jane currently maintains a financial interest in Maureen’s Kids in Motion business, and has assisted Maureen in the development, marketing and operation of Kids in Motion. Such activiiy and involvement with a competitive business, plaintiff states, is contrary to the franchise agreement between Gymboree and Jane.
DISCUSSION
For the court deciding a motion to dismiss for a failure to state a claim for which relief can be granted, Massachusetts procedural rules require that the facts alleged in the complaint be considered true and all inferences must be resolved in favor of the plaintiff. Municipal Light Co. of Ashburnham v. Commonwealth, 34 Mass.App.Ct. 162, review denied 415 Mass. 1102, cert. denied 114 S.Ct. 187. (1993). A complaint is not properly dismissed if it could support relief under any theory of law, Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 89 (1979), and unless it is beyond a doubt that plaintiff can prove no set of facts in support of her claim which would entitle her to relief. Nader v. Citron, 372 Mass. 96, 98 (1977), citing Conley v. Gibson, 355 U.S. 41, 45-56 (1957). Furthermore, a complaint should not be dismissed because it asserts a new or *706 extreme theory of liability. New England Insulation Co. v. General Dynamics Corp., 26 Mass.App.Ct. 28 (1988). Dismissal is proper, however, if on the face of the complaint it is clear that the plaintiff has failed to state a valid claim and no relief can be granted. Orion Ins. Co. PLC v. Shenker, 23 Mass.App.Ct. 754, 756 (1987); Mass.R.Civ.P. 12(b)(6).
In her complaint, plaintiff contends that she has suffered economic losses because Maureen has had access to the confidential materials and trade secrets of Gymboree and has co-opted them for her own use to benefit her business. Plaintiff further claims that Gymboree is responsible for her losses due to its failure to take action against Maureen’s alleged misappropriation of Gymboree’s confidential business concepts, programs and products. Beyond arranging for Maureen’s termination from Gymboree of Westborough, Gymboree has taken no further action in response to Maureen’s operation of Kids in Motion. Plaintiff claims, therefore, that she is entitled to protection from Maureen’s improper use of Gymboree’s trade secrets in her business, and Gymboree has breached the Agreement by its failure to prevent infringement on her business interests. Plaintiff also alleges that Gymboree violated the implied covenant of good faith and fair dealing implied in the Agreement by failing to take appropriate action to stop the unfair competition on the part of Maureen and Jane; and furthermore that Gymboree violated G.L.c. 93Aby its failure to act against Maureen’s alleged unfair competition.
With regard to defendant Jane, plaintiff asserts that Jane’s failure to have Maureen execute a non-disclc-sure/non-competition agreement during Maureen’s employ at Gymboree of Westborough, along with her role as an investor in Maureen’s Kids in Motion business, constitute a breach of her contract with Gym-boree, a breach of the implied covenant of good faith and fair dealing, and a violation of G.L.c. 93A. Plaintiff also alleges that Jane is liable for tortious interference with contractual relations as a result of her participation in the unfair competition which the Kids in Motion business poses against Gymboree of Acton.
As for the claims against Maureen, plaintiff asserts that Maureen is improperly utilizing her knowledge of Gymboree’s business programs and concepts and applying them for use at Kids in Motion. Plaintiff claims that implicit in the non-disclosure/non-competition agreement which Maureen signed during her employment at Gymboree of Boston, was an implied covenant of good faith and fair dealing which Maureen subsequently breached by her business practice. Lastly, plaintiff claims that Maureen’s improper operation of Kids in Motion is a violation of G.L.c. 93A.
I. Standing
As a preliminary matter, in her motion in opposition to Maureen’s motion to dismiss, plaintiff claims that Maureen has no standing upon which to bring her motion because she was in default when she filed the motion to dismiss. Plaintiffs argument for lack of standing is moot, however, as Maureen’s motion to set aside the default under Mass.R.Civ.P. 55(c) was allowed on December 7, 1995.
II. Breach of Contract
A. Breach of contract claim regarding the Agreement.
In Count II of the complaint, which incorporates Count I, plaintiff alleges that Gymboree had an obligation to protect her from unfair competition in that the Agreement grants her the right to an exclusive territory in Acton for the operation of her Gymboree business. Under the Agreement,[4] however, Gymboree is under no obligation to plaintiff to bring an action against another franchisee, or anyone else. Section 2.01(c) of the Agreement provides that “fwjhile this agreement shall remain in effect, Gymboree shall not grant to any other person, firm or corporation in the Territory the privilege of establishing a Gymboree Program Site nor will Gymboree in the Territory operate the Gymboree Program.” According to the explicit terms of the Agreement, Gymboree granted plaintiff an exclusive right to operate a Gymboree franchise in the territory which includes Acton. Because Maureen’s Kids in Motion business is not a Gymboree franchise and is not in any way affiliated with Gymboree, and because Gymboree has not infringed on plaintiffs exclusive territory by establishing a competing Gym-boree franchise in Acton, Gymboree has not breached the Agreement.
B. Third party beneficiary.
Alternatively, plaintiff seeks to enforce the contractual obligations between Gymboree and the LaRoche’s on a third-party beneficiary theory. In order to assert an interest as third-party beneficiary of the contract between Gymboree and Jane, or between Maureen and Gymboree (in the form of the non-disclosure/non-competition agreement), plaintiff must show that she was an intended or incidental beneficiary of the contract. “Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right of performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary; or (b) the circumstances indicate that the promisee intends to give the beneficiary the benefit of the promised performance . . . An incidental beneficiary is a beneficiary who is not an intended beneficiary. ” Ayala v. Boston Housing Authority, 404 Mass. 689, 699 (1989), quoting 4 Corbin, Contracts §777, at 25 (1951). According to the explicit terms of the Agreement, plaintiff cannot claim the status of either an intended or incidental beneficiary.
Under the Agreement, the decision to take action against another franchisee for any reason rests solely within Gymboree’s discretion. In fact, it is clear that *707 Gymboree contemplated the kind of action set forth in this claim and explicitly contracted to reserve its discretion regarding such action. Section 9.15 of the Agreement states that “Franchisee shall have no right to enforce the obligations of any other franchisees of Gymboree. Franchisee shall not be deemed a third party beneficiary with respect to any other franchise agreement or other agreement or have any rights to enforce any obligations thereunder.” Furthermore, section 9.14 states that “Except where this agreement expressly obligates Gymboree to reasonably approve or not unreasonably withhold its approval of any action or request by Franchisee, Gymboree has the absolute right to refuse any request by Franchisee or to withhold its approval of any action or omission by Franchisee.”
Furthermore, the Agreement specifically addresses the infringement of Gymboree’s confidential information which could potentially harm Gym-boree or any franchisee. In the Agreement, Gym-boree states that it specifically reserves the discretion to take any action it deems necessary to seek relief from such unfair competition, and explicitly undertakes no obligation to protect the franchisee from the possible infringement. Section 503(b) of the Agreement states that “Gymboree, at its sole cost and expense, shall have sole discretion to take such action as it deems appropriate in connection with the foregoing and the exclusive right to control any settlement, litigation, Patent and Trademark Office or other proceeding arising out of any such infringement, challenge or claim or otherwise relating to any Gymboree mark. . . . Franchisee acknowledges that Gymboree is not obligated hereunder to protect the right which Franchisee has to use the Gymboree marks . . .” (Emphasis in original.)
As a general rule, “(i]f the two contracting parties expressly provide that some third party who will be benefitted by performance shall have no legally enforceable right, the courts should effectuate the expressed intent by denying the third party any direct remedy.” Volpe Construction Co., Inc. v. The First National Bank of Boston, 30 Mass.App.Ct. 249, 256 (1991), citing 4 Corbin, Contracts §777, at 25 (1951). It is clear from the provisions of the Agreement that Gymboree did not intend for plaintiff to have a stake in actions on the part of Gymboree against any other party. Plaintiff, therefore, fails to state a claim for which relief may be granted as an intended third-party beneficiary of the franchise agreement between Jane and Gymboree, and she does not have a breach of contract claim against Gymboree under the Agreement. Moreover, Gymboree had no contractual duty to protect plaintiff from the competition which Maureen’s business poses, nor is Gymboree under any obligation to plaintiff to regulate the conduct of any person or entity not a party to the Agreement. Consequently, the claims in Count I and Count II against Gymboree and Jane are prohibited by the unambiguous terms of the Agreement.
III. Implied Covenant of Good Faith and Fair Dealing
In Count III of her complaint, plaintiff claims that Gymboree’s failure to take action to protect her against unfair competition from Maureen constitutes a breach of the covenant of good faith and fair dealing which is implied in the Agreement. In particular, plaintiff claims that the Agreement grants her exclusive territorial rights to operate a Gymboree franchise in the Acton area, and Gymboree allowed Maureen’s Kids in Motion to infringe on that right. Also in Count III, plaintiff asserts that Jane’s failure to have Maureen sign a non-disclosure/non-competition agreement, as well as her continued involvement in Maureen’s Kids in Motion business, is a violation of the implied covenant of good faith and fair dealing inherent in the franchise agreement and the non-disclosure/non-competition agreement between Jane and Gymboree. According to plaintiff, Maureen’s operation of Kids in Motion is a violation of the covenant inherent in Maureen’s former non-disclosure-non-competition agreement with Gymboree.
As a threshold matter, there is no contractual relationship between plaintiff and either Jane or Maureen, and, for reasons set forth in section II, plaintiff cannot assert contract-based claims against Jane and Maureen on a third party beneficiary theory. Accordingly, the claims against Jane and Maureen premised on a breach of implied covenant of good faith and fair dealing must fail. Therefore, the only surviving claim for breach of the implied covenant is that against Gymboree.
In Massachusetts, the implied covenant of good faith and fair dealing is applicable to every contract. Anthony’s Pier Four, Inc. v. HBC Associates, 411 Mass. 451, 471 (1991), citing Warner Ins. Co. v. Commissioner of Ins., 406 Mass. 354, at 362 n.9 (1990). “Neither party shall do anything that will have the effect of destroying or injuring the right of the other pariy to receive the fruits of the contract.” Anthony’s Pier Four, 411 Mass. at 471. Massachusetts courts have acknowledged that “. . . the franchise relationship provides ample opportunity for a large corporate franchisor to take unfair advantage of a small franchisee who is dependent on the franchisor for its business.” Piantes v. Pepperidge Farm, Inc., 875 F.Supp. 929, 938 (D.Mass. 1995). Although, for reasons stated in Section II, there was no breach of the express terms of the Agreement, plaintiffs claim for breach of the covenant of good faith and fair dealing with regard the Agreement survives this motion to dismiss because the implied covenant cannot be contracted away. Ultimately, plaintiff may be able to prove her case for breach of this covenant by showing that Gymboree sought to deny her the fruits of the Agree *708 ment by allowing Maureen to infringe on plaintiffs exclusive territory.
On the issue of damages, plaintiff asserts that her losses from Gymboree’s breach of the implied covenant of good faith and fair dealing amount to lost profits and damage to her goodwill. In order to bring a claim for loss of goodwill, plaintiff must show that Maureen, through her Kids in Motion business, is “palming off’ her services and programs as that of Gymboree’s. “ ‘Palming off or ‘passing off is an attempt to deceive the public into believing it is trading with one person when in fact it is dealing with another.” Datacom Interface, Inc. v. Computerworld, Inc., 396 Mass. 760 (1986). According to plaintiff, Maureen is deceiving the public into believing that they are dealing with Gymboree by using the same equipment and developmental programs. Plaintiff has, therefore, asserted a valid claim that her business suffered a loss because Gymboree failed to act pursuant to the implied covenant of good faith and fair dealing to prevent this ongoing deception. As a result, Gymboree’s motion to dismiss must fail as to this claim.
IV. Tortious Interference with Contractual Relations
Plaintiff claims, in Count IV of the complaint, that Jane is liable for tortious interference with the Agreement. Plaintiff alleges that Jane induced Gymboree into breaching the Agreement by allowing Jane and Maureen to open Kids in Motion, which plaintiff asserts is unfairly competing with her franchise.
A claim for tortious interference with advantageous business relations requires a showing that 1) the plaintiff had a contract with a third person, 2) the defendant knowingly induced the third party to breach that contract, and 3) the plaintiff was harmed by the defendant’s actions. United Truck Leasing Corp. v. Geltman, 406 Mass. 811, 812 (1990). However, for reasons discussed in section II, plaintiff cannot establish an essential element of a tortious interference claim, i.e. breach of contract, therefore she cannot move forward with Count IV.
V. Chapter 93A
In countV of her complaint, plaintiff brings claims against all three defendants for unfair and deceptive trade practices in violation of G.L.c. 93A. Although plaintiff has failed to designate the section of G.L.c. 93A under which she brings her claim, because plaintiff claims losses to her business rather than as a consumer of Gymboree’s products and services, her claim properly brought under G.L.c. 93A, §11. See Brennan v. Carvel Corp., 929 F.2d 801 (1st Cir. 1991) (“[w]hereas Section 11 of Chapter 93A grants cause of action to persons engaged in conduct of any trade or commerce, Section 9 grants cause of action to consumers; thus, claims brought under Section 9 are based on important public policy whereas Section 11 claims are based primarily on private interests”).
In order to determine unfair or deceptive business practices under c. 93A, the courts must first look to the threshold of evidence required according to the Federal Trade Act as to what constitutes a violation. PMP Associates, Inc. v. Hearst Corp., 366 Mass. 600 (1975). The Federal Trade Commission requires the violative practice to be 1) within the penumbra of some common law, statutory or other established concept of unfairness; 2) immoral, unethical, oppressive, or unscrupulous; 3) causative of substantial injury to the other party; 4) exploitive or inequitable; and 5) seriously detrimental to consumers or others. N.J. Gendron Lumber Co. v. Great Northern Homes, Inc., 8 Mass.App.Ct. 411, 418 (1979). The Massachusetts standard is higher for a business to establish unfair and deceptive practices on the part of another business pursuant to section 11 than that applied when the action is brought by a consumer under section 9. Madan v. Royal Indem. Co., 26 Mass.App.Ct. 756 (1989), review denied 404 Mass. 1103 (1989). The complained of conduct must “attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble world of commerce.” Compagnie de Reassurance D'Ile de France v. New England Reinsurance Corp., 825 F.Supp. 370, 381 (D.Mass. 1993), citing PMP Associates, Inc. v. Globe Newspaper Company, 366 Mass. 593 (1975).
The boundaries of a business operator’s claim is a matter of law. Schwanbeck v. Federal-Mogul Corp., 31 Mass.App.Ct. 390, 414 (1991), review granted 411 Mass. 1103 (1991), and superseded on other grounds, remanded 412 Mass. 703 (1992); See Mechanics Bank v. Killeen, 377 Mass. 100, 108 (1979); Levings v. Forbes & Wallace, Inc., 8 Mass.App.Ct. 498, 504 (1979). “We think it defeats commercial expectations and foments litigation to impose too delicate a standard of negotiating conduct, particularly among commercially sophisticated contending parties.” Schwanbeck, 31 Mass.App.Ct. at 414. (seller of business liable for misrepresentations made during sale, but not for discussing different details to one party rather than another). On the other hand, c. 93A cases are fact specific and require determination on a case-by-case basis. Compagnie at 382, citing Doliner v. Brown, 21 Mass.App.Ct. 692 (1986). “Whether particular conduct merits c. 93A condemnation always depends on the unique facts of each case.” VMark Software, Inc., v. EMC Corp., 37 Mass.App.Ct. 610, 622, n.14 (1994). The language in 93A is “broad enough to take in some reprehensible acts committed in business context that elude conventional definitions and categories,” Doliner v. Brown, 21 Mass.App.Ct. 692, 697 (1986).
Because the nature of c. 93A claims requires consideration on a case-by-case basis, it would be imprudent to decide the merits of plaintiffs claim on a motion to dismiss. Plaintiff has pled sufficient facts which, if accepted as true, would constitute unfair and deceptive acts within the meaning of c. 93A.
*709 ORDER
Based on the foregoing, it is hereby ORDERED that: 1) the motions to dismiss brought by defendants The Gymboree Corporation and Jane LaRoche are ALLOWED as to Counts I, II, and IV, and those counts are dismissed with prejudice: 2) the motions to dismiss brought by Maureen LaRoche and Jane LaRoche as to Count III are ALLOWED, and those counts are dismissed with prejudice; 3) the motion to dismiss brought by The Gymboree Corporation as to count III is DENIED; and 4) the motions to dismiss on the part of all defendants are DENIED as to count V. Accordingly, only Count III against The Gymboree Corporation and Count V against all defendants survive.

Section 9.04 of the Agreement states that ‘THE INTERPRETATION AND CONSTRUCTION OF THIS AGREEMENT, WHEREVER MADE AND EXECUTED AND WHEREVER TO BE PERFORMED, SHALL BE GOVERNED BY THE LAW OF THE JURISDICTION IN WHICH THE LARGEST AMOUNT OF THE TERRITORY (MEASURED IN AREA) IS LOCATED.” Emphasis in original. Neither party contests that the entire territory is in Massachusetts.

Gymboree’s non-disclosure/non-competition agreement identifies the parameters of Gymboree’s trade secrets and confidential information about the company and its business, and prohibits employees and franchise owners from divulging such information to anyone who has not signed a similar agreement.

The Agreement, which is attached as an exhibit to the complaint, may be considered for this motion to dismiss. See Leach v. Quality Health Services, Inc., 869 F.Supp. 315 (U.S. Dist Ed. Penn 1994); see Mass.R.Civ.P. 10(c).